**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| IN RE: | C/A No. 19-02093-JW |
| | Chapter 13 |
| Ramona Sherretts Brown, | |
| Debtor(s). | **ORDER ON OBJECTION TO CLAIM** |

  This matter is before the Court upon Ramona Sherretts Brown's ("Debtor") Objection ("Objection") filed on June 10, 2019, which disputes the claim of Paul Patrick ("Patrick") filed on May 2, 2019. Patrick filed a reply to the Objection on July 10, 2019, and a hearing was held on the matter. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core matter under 28 U.S.C. § 157.

  Patrick filed a proof of claim on May 2, 2019 ("Claim") asserting an unsecured claim in the amount of $175,039.18, consisting of $160,000 in principal balance owed and $15,039.18 in interest due. The Claim attached an itemized statement of interest, fees, expenses, and charges showing the breakdown of the amount of the Claim.

  The Claim is based upon an oral agreement entered in January 2013, in which Patrick loaned $160,000 to Debtor to assist her with closing her husband's estate ("Agreement"). Based on the testimony of both parties, it appears the general terms of the Agreement were that interest would be charged at a rate of 8.25% annually and that Debtor was to make monthly interest payments to Patrick in the amount of $1,100 per month. Under the Agreement, it appears the principal balance of the loan became due upon either three years after the entry of the Agreement (January 2016) or upon the proceeds being available from the sale of Debtor's principal residence. However, the parties dispute what was required after three years passed under the Agreement. Patrick asserts that Debtor intended to sell her real estate after three years and use the proceeds

from the sale to pay off the loan, but that he was not to receive an interest in Debtor's property. Conversely, Debtor testified that "If I couldn't pay it off within the three years, then I would sell my land, but that I would give him an interest in my land."

Like many informal arrangements, the parties did not agree upon any terms to address if Debtor failed to make timely payments to Patrick, including whether Patrick could accelerate the entire debt upon Debtor's default on the monthly interest payments.

On July 5, 2017, Patrick filed a complaint in state court against Debtor for the collection of the entire amount owed under the Agreement.[1]

The Objection alleges that Patrick's claim is barred by both the Statute of Frauds and Statute of Limitations under South Carolina law.[2] As to the Statute of Frauds, Debtor asserts that the Agreement was required to be in writing under S.C. Code Ann. § 32-3-10 because it pertains to an interest in real estate and because the payment terms of the loan were longer than a year. As to the Statute of Limitations, Debtor asserts that the action is barred under the three year Statute of Limitation under S.C. Code Ann. § 15-3-530 because Debtor last made a payment on the Agreement on May 24, 2014,[3] which was more than three years prior to the July 5, 2017 complaint filed by Patrick in state court to collect on the Agreement. Patrick asserts that the claim is not barred by either statute and that the claim should be allowed in full.

---

[1] Neither the complaint nor Debtor's answer in the state court action indicates that Debtor was to transfer an interest in her real estate to Patrick. At the hearing, an issue was raised as to whether Debtor's answer in the state court action, which admitted the terms of the Agreement as alleged by Patrick in the complaint, precluded Debtor in this matter from contesting the terms of the Agreement and the date of the last installment payment made under the Agreement. Because the Court finds that the Agreement did not require a transfer of real estate to Patrick, it is not necessary to address whether the Debtor's state court answer has preclusive effect.

[2] It appears the parties do not dispute that South Carolina law is the controlling law under the Agreement.

[3] The parties disputed when Debtor made the last installment payment under the Agreement, with Debtor asserting that she last made a payment in May 2014, while Patrick asserted that the last payment was in May 2015.

2

At the hearing, the parties disputed whether Patrick's proof of claim satisfied Fed. R. Bankr. P. 3001(f), and therefore, entitled to *prima facie* evidence of validity and amount.[4] However, Debtor's Objection only raises affirmative defenses as grounds for the disallowance of the Claim.[5] As the burden to prove an affirmative defense is on the party asserting the defense, the Court finds Debtor has the burden in this matter. *See Raleigh v. Ill. Dept. of Revenue*, 530 U.S. 15, 17 (2000) ("[B]ankruptcy does not alter the burden imposed by the substantive law. . . .*"); See Pike v. SC. Dept. of Transp.*, 530 S.E.2d 87, 91 (S.C. 2000) (holding that the party asserting an affirmative defense has both the burden of proof and burden of persuasion as to the defense); *In re Falwell*, 434 B.R. 779, 787 (Bankr. W.D. Va. 2009) (in addressing an objection to claim that raised the affirmative defense of Statute of Limitations, "[t]he Debtors have the burden of production and the burden of persuasion on the issue of whether the statute of limitations has run").

### *Statute of Frauds*

South Carolina Code § 32-3-10 provides in relevant part that "[n]o action shall be brought[:]: . . . (4) [t]o charge any person upon any contract or sale of lands, tenements or hereditaments or any interest in or concerning them; or (5) [t]o charge any person upon any agreement that is not to be performed within the space of one year from the making thereof; [u]nless the agreement upon which the action shall be brought or some memorandum or note

---

[4] While Debtor asserted that Fed. R. Bankr. P. 3001 required the Claim to attach the Agreement's payment history, it does not appear one was required under the Rule as Patrick is not claiming a security interest in Debtor's principal residence. As the Agreement was an oral agreement, it was not based on a writing that would be required under Fed. R. Bankr. P. 3001(c)(1). It appears the only attachment required in this matter for the Claim was an itemized statement of the principal, interest, expenses, fees and costs under Fed. R. Bankr. P. 3001(c)(2)(A), which Patrick included with the Claim. Therefore, it appears the Claim satisfied the requirements of the Bankruptcy Rules and would be entitled to a *prima facie* presumption. Nonetheless, the Court finds that Patrick also established the validity and amount of the Claim based on the evidence presented at the hearing.

[5] Under South Carolina law, both the Statute of Frauds and the Statute of Limitations are affirmative defenses. *See Fici v. Koon*, 642 S.E.2d 602, 606 (S.C. 2007) ("The Statute of Frauds is an affirmative defense."); *Arant v. Kressler*, 489 S.E.2d. 206, 208 n. 1 (S.C. 1997) ("Generally, the statute of limitations must be pled as an affirmative defense.")

thereof shall be in writing and signed by the party to be charged therewith or some thereunto by him lawfully authorized."

*Performance within One Year*

In addressing the requirement that an agreement must be in writing if it cannot be performed within one year under S.C. Code Ann. § 32-3-10(5), the Court of Appeals of South Carolina has stated:

> It is equally well established that the Statute of Frauds applies only to contracts which are impossible of performance within one year. A contract having a contingency which may occur within the year need not be supported by a written document. If there is a possibility of performance within a year, the contract is not barred by the Statute of Frauds. The fact that performance within a year is highly improbable or not expected by the parties does not bring a contract within the scope of this clause.

*Roberts v. Gaskins*, 486 S.E.2d 771, 774 (S.C. Ct. App. 1997). In situations where a party is to make payments to another party over a period longer than a year, South Carolina courts find that the Statute of Frauds is only applicable when it is impossible for prepayment of the agreement to occur within one year of its entry. *See id.* ("Nothing in the record made prepayment by [the purchaser] impossible. Interest rate fluctuations quite often make refinancing and/or prepayment advantageous to a borrower. Prepayment is not at all out of the realm of possibility in transactions of this nature. Therefore, we conclude the master's reasoning [that the Statute of Frauds is not applicable] is sound.").

In the present matter, while Debtor testified that she indicated to Patrick at the time the parties entered into the Agreement that the earliest she could pay him back was in three years, nothing in the record demonstrates that an early prepayment of the Agreement was impossible. The terms of the Agreement did not prohibit a prepayment, and it appears early payment of the Agreement was contemplated as the Agreement became fully due if Debtor sold her real estate

4

within the first three years of the Agreement. For these reasons, the Court finds that S.C. Code Ann. § 32-3-10(5) does not bar Patrick's Claim based on the Agreement.

*Interest in Real Property*

Debtor also alleges that the Agreement involves the transfer of an interest in Debtor's real estate, and that the Agreement must be in writing under S.C. Code Ann. § 32-3-10(4). First, the Court notes that Patrick is not asserting a claim secured by property of Debtor's estate or a right or interest in the Debtor's real estate. Further, Patrick is not seeking the Court to require a sale or conveyance of Debtor's real estate. Rather, Patrick is only seeking to be treated as an unsecured creditor for the amounts borrowed by Debtor, which Debtor readily admits to borrowing.

Second, the Court is not convinced based on the evidence presented that the Agreement provided for a transfer of interest in Debtor's real estate to Patrick. Debtor's testimony was conflicting regarding the terms of the Agreement:

| Debtor: | I told him that it would be at least three years before I could pay it off, and if I couldn't pay it off within the three years, then I would sell my land but that I would him give an interest in my land. |
|---|---|
| Debtor's Counsel: | Did he accept your offer to take a mortgage and record it with the county? |
| Debtor: | No. |

No testimony was provided as the nature of the interest in real estate that she intended to transfer to Patrick, including whether it was a partial interest in real estate or how her sale of real estate would affect Patrick's alleged interest.

The Court is more convinced that Debtor believed she would pay off the debt from her income or other resources during the three year period but that if she was unable to do so, she expected to sell her real estate to create the proceeds, which she then expected to use to repay

5

Patrick under the Agreement. There is no evidence that Patrick had a right to compel the sale of Debtor's real estate or a recorded interest therein.

Further, even if the parties agreed that Patrick had an enforceable interest in any proceeds from Debtor's sale of the real estate, the general rule is that such an agreement is not subject to the Statute of Frauds.[6] *See* 72 Am. Jur. 2d *Statute of Frauds* § 59 (Westlaw August 2019 Update) ("As a general rule, a contract relating to the disposition of the proceeds of land, in case of its sale, is not one for an interest in the land within the meaning of the Statute of Frauds, and may be enforced, even though it is not in writing, after the land has been sold.").

Finally, the Court notes that Debtor not only admitted to the existence of the oral agreement and the general terms of repayment, but she, in fact, testified that she agreed to more terms than those asserted by Patrick. While the Court finds the Agreement is not subject to the Statute of Frauds, it does appear that Debtor's judicial admissions to those alleged additional terms of the oral agreement would otherwise except the Agreement from the statute.[7] *See Gibson v. Arnold*, 288 F.3d 1242, 146-47 (10th Cir. 2002) (applying Okla. Law) ("[V]irtually every court that has addressed the use during the last twenty-five years has held that judicial admissions are an exception to the statute of frauds.").

---

[6]  Debtor did not cite to any case law for support of her argument that the Statute of Frauds applies to Patrick's Claim.

[7]  It also appears under South Carolina law that the answer filed by Debtor in the state court action, which admitted to the terms of the Agreement as set forth in Patrick's complaint, may be a sufficient writing within the Statute of Frauds to permit the enforcement of the Agreement if the statute applied to this matter. *See Robert Harmon and Bore, Inc. v. Jenkins*, 318 S.E.2d 371, 373-74 (S.C. Ct. App. 1984) ("In South Carolina, a pleading admitting a parol agreement that is within the statute of frauds may constitute a sufficient writing within the statute so as to enable the court to enforce the contract; however, the pleading must be sufficiently definite and certain and it must be signed by the party to be charged or by his agent or attorney on his behalf.").

For the foregoing reasons, Debtor has not satisfied her burden of proving that the Statute of Frauds under S.C. Code. Ann. 32-3-10(5) bars Patrick's Claim in this matter.[8]

### *Statute of Limitations*

Debtor asserts that the Statute of Limitations bars the collection of the entire amount claimed because more than three years passed from the time Debtor last made an interest-only installment payment according to the Agreement to the time Patrick brought an action to collect in state court. Patrick asserts that because the Agreement did not contain a provision providing for the acceleration of the debt, the Statute of Limitations did not begin to run upon Debtor's failure to pay on the Agreement but only upon the maturity of the Agreement in January of 2016 (three years after the entry of the Agreement).

In the present matter, the Court finds the Agreement is a debt requiring the payment of interest-only installment payments until the Agreement's maturity, and that the parties did not agree to an acceleration provision that permitted Patrick to accelerate the entire debt upon Debtor's default in payments. Therefore, in the absence of an acceleration provision, it appears under the terms of the Agreement that Patrick would have only been able to bring a cause of action for the recovery of the whole amount of the debt upon the maturity of the Agreement.[9]

---

[8] Even if Debtor had demonstrated that the parties agreed to a contract for the sale or conveyance of real estate, subject to the Statute of Fraud, the Court would find that based on the parties' performance, the Agreement was removed from the Statute of Frauds. "An oral contract within the Statute of Frauds may be taken out by performance where one party does some act essential to performance of the agreement resulting in loss to himself and benefit to the other." *Graham v. Prince*, 358 S.E.2d 714, 717 (S.C. Ct. App. 1987). In the present matter, there is no dispute that Patrick loaned the $160,000 to Debtor, which is clear evidence of his performance under the Agreement and that this loan resulted in a loss to Patrick and benefit to Debtor. To hold that Patrick's Claim is barred by the Statute of Frauds would permit a significant windfall to Debtor, who does not dispute she borrowed the money from Patrick. Such a result would be inequitable, especially when Patrick is not asserting the Claim is secured or that he otherwise has rights to Debtor's real estate.

[9] It is not unreasonable to believe that considering the parties relationship, Patrick elected to delay commencing a collection action against Debtor until the Agreement became fully due.

7

Both parties agree that South Carolina Code § 15-3-530 applies to this matter, which provides that "an action upon a contract, obligation or liability, express or implied" must be brought within three years. However, it does not appear South Carolina case law has directly addressed when the Statute of Limitations commences upon a borrower's failure to make an interest-only installment payment on an unaccelerated debt.

Both the historical national jurisprudence and the case law of neighboring jurisdictions hold that, when the loan has not been accelerated, the failure to make an installment payment does not trigger the running of the Statute of Limitations as to the whole amount of the debt. Within this general proposition, courts take two different approaches regarding the running of the Statute of Limitations for a missed installment payment. The first approach, which this Court will designate as the "Maturity Date Approach," holds that in the absence of the acceleration of the debt, when a borrower fails to make an installment payment, the Statute of Limitations to collect the debt (including the missed installment payment) does not commence until the last installment payment becomes due under the terms of the loan.[10] The second approach, which the Court will designate as the "Installment Approach," holds that in the absence of an acceleration of an installment debt,

---

[10] *See Wall v. Citizens and Southern Bank of Houston County*, 274 S.E.2d 486, 487 (Ga. 1981) ("We agree with the Court of Appeals that the note gives the bank an election to accelerate maturity of the debt; that if maturity was in fact accelerated, the statute of limitations began to run from the time of the election to accelerate rather than on the date the last installment was due[.]"); *Glass v. Grant*, 167 S.E. 727, 728 (Ga. Ct. App. 1933) ("In an entire contract for a stated sum, providing for its payment in annual equal installments, the statute of limitations does not begin to run until after the date the last installment becomes due."). The reasoning under this approach is that to require the Statute of Limitations to run for each individual installment payment would require a multitude of lawsuits for each missed installment payment creating unnecessary litigation; therefore, the more appropriate course of action is to delay the running of the Statute of Limitations until the entire debt becomes due. *See Glass*, 167 S.E. at 728.

Courts also apply this approach when the installment payment constitutes only a payment of interest on the debt, as is the case here. *See* Annotation, *When Statute of Limitations begins to run against action to recover interest*, 36 A.L.R. 1085 (1925) ("Where a contract provides for the payment of interest periodically, so that instalments thereof fall due before the maturity of the principal debt, there is a conflict of authority as to when the Statute of Limitations begins to run against an instrument. The weight of authority is that it does not begin to run until the principal debt is due and payable. . . . In other jurisdictions it is held that where interest is payable periodically, the Statute of Limitations runs against each instalment of interest from the date when it becomes payable.").

8

a default on a single installment payment will result in a cause of action to recover that missed installment payment, but not a cause of action to recover the whole amount of the debt.[11]

Debtor has not provided any authority or South Carolina case law that would hold that the failure to make an installment payment results in the running of Statute of Limitations as to the whole amount of the debt (including any future installment payments that have not yet become due).[12] Therefore, without authority to the contrary, this Court believes the Supreme Court of South Carolina would follow the general proposition of the national historical jurisprudence and neighboring jurisdictions and hold that, in the absence of the acceleration of the debt, a missed installment payment would not commence the Statute of Limitations as to the collection for the whole amount of the debt.[13]

---

[11]  *See U.S. Leasing Corp. v. Everett, Creech, Hancock, and Herzig*, 363 S.E.2d 665, 669 (N.C. Ct. App. 1988) ("The general rule in the case of an obligation payable in installments is that the statute of limitations runs against each installment individually from the time it becomes due, unless the creditor exercises a contractual option to accelerate the debt, in which case the statute begins to run from the date the acceleration clause is invoked."); *Keefe Co. v. Americable Int'l, Inc.,* 755 A.2d 469, 472 (D.C.2000) (stating that the rule "in most of the nation, for at least a century" is that "where a debt is payable in independent instalments the right of action accrues upon each as it matures"); Richard A. Lord, 31 *Williston on Contracts* § 79:17 (4th ed. 1990) ("If, by its terms, the money is payable in installments, then no breach, however serious, as to earlier installments can resolve the creditor's right into a single claim for damages on the entire contract. A separate cause of action arises on each installment, and the statute of limitations runs separately against each, except where the creditor has a right to accelerate payments on default and does so."); Annotation, *When Statute of Limitations begins to run against action to recover upon contract payable in installments*, 82 A.L.R. 316 (1933) (When a debt is payable at several terms, . . . the time of prescription begins to run from the expiration of the first term, for the part then payable, and for the other parts only from the day of expiration of the respective terms of payment. And it has come to be the established rule that when recovery is sought on a note or other obligation payable by instalments, the Statute of Limitations runs against each installment from the time it becomes due; that that is from the time when an action might be brought to recover it.").

[12]  At hearing, Debtor cited only to this Court's prior opinion in *In re Mazyck*, 521 B.R. 726 (Bankr. D.S.C. 2014) where the Court disallowed a claim pursuant to the three-year Statute of Limitations when the debtor had not made payments on the debt in over 10 years. However, the present matter is easily distinguishable from *Mazyck*. *Mazyck* was an uncontested matter in which there was no dispute as to when the Statute of Limitations commenced as to the recovery of the whole amount of the claims in dispute. Unlike the present matter, in *Mazyck* there was no issue as to whether the claims were unaccelerated installment payments as in this case.

[13]  The Court finds the following case law from South Carolina instructive in this matter: *Sur. Realty Corp. v. Asmer,* 153 S.E.2d 125, 127 (S.C. 1967) ("In actions brought for the payment of installments, as required by contract, as each installment becomes due a new cause of action arises"); *Town of Cheraw v. Turnage*, 191 S.E. 831 (S.C. 1937) (indicating that it does "not regard the acceleration provision of the statute as automatic. . . . [T]he sounder view is . . . that the acceleration is optional with the municipality, and that unless and until the municipality exercises its rights to declare the whole balance of the assessment to be due and payable because of the default in the payment of the installment, the installment arrangement continues in effect, and that the five-year limitation period does not begin to

For the purposes of the present matter, it is not necessary for the Court to determine which of the two remaining approaches (The Maturity Date Approach or Installment Approach) the Supreme Court of South Carolina would follow because the amount of Patrick's Claim as filed would not be barred by the Statute of Limitations under either approach. Patrick filed his state court action in July of 2017, which was less than three years after the date that the principal balance matured and became due (January 2016). Therefore, the collection of the $160,000 payment of the outstanding principal balance that became due in January 2016 would not be barred by the Statute of Limitations. Further, Patrick's Claim only asserts outstanding interest for approximately thirteen and half months,[14] which equates to the fourteen interest-only installment payments that became due under the Agreement from October 2014 to December 2015. Because these installment payments became due within the three years prior to Patrick's filing of the state court complaint in July 2017, the collection of these payments is also not be barred by the three-year Statute of Limitation under either approach.

For these reasons, under either approach, the total amount of Patrick's Claim as filed of $175,039.18, consisting of $160,000 in principal and $15,039.18 in interest payments, is not barred by the Statute of Limitations. Therefore, the Court finds Debtor has failed to meet her burden to show that the Claim, in the amount as filed, is barred by the Statute of Limitations.

---

run until the last installment matures."); *Singleton v. Heriott*, 37 S.C.L. (3 Rich.) 321, 324 (1832) ("[T]here can be no doubt that he had also the right to seize and re-sell upon default being made in the payment of the first instalment. He might waive the first without defeating the second. For the right to act upon the second default did not depend upon the first. Each was independent of the other."). The Court also found instructive the Court of Appeals for the Fourth Circuit's opinion: *American Inn, L.P. v. Wolf*, 28 Fed. App'x 316 (4th Cir. 2002) (applying V.A. law) (finding that a note requiring monthly payments of principal and interest was a divisible contract, and therefore, an installment contract for which the Statute of Limitations commenced as to each individual installment payment as each payment became due).

[14]    Patrick's Claim asserts outstanding interest in the amount of $15,039.18, which based on the terms of the agreements is equal to approximately thirteen and half months of interest ($15,039.18/$1,100 interest payment per month= 13.67 months).

## **CONCLUSION**

For these reasons, the Court overrules Debtor's objection and finds that Patrick's Claim shall be allowed in the full amount as filed.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
August 13, 2019

**FILED BY THE COURT**
**08/13/2019**



Entered: 08/13/2019

*John E Waites*

US Bankruptcy Judge
District of South Carolina